FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 22 2014

JAMES W. McCORMACK, CLERK
By: _____
                        DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

ROBERT C. HOWARD                                                       PLAINTIFF

VS.        CV 2:14-cv-00092 JLH/JTR

NUCOR-YAMATO STEEL COMPANY (LIMITED
PARTNERSHIP); and JOHN DOES 1-10                               DEFENDANTS

This case assigned to District Judge Holmes
and to Magistrate Judge Ray

## COMPLAINT

Comes now Plaintiff, Robert C. Howard, by and through his attorneys, Brandon Lacy and Tony Wilcox of Wilcox & Lacy, PLC, and for his Complaint against Nucor-Yamato Steel Company (Limited Partnership) and John Does 1-10, states:

### I. PARTIES

1. Robert C. Howard is a resident of Kentucky and was so on July 27, 2011 at the time of his injuries.

2. Nucor-Yamato Steel Company (Limited Partnership) (hereinafter "Nucor") is a foreign company authorized to do business in the State of Arkansas with a principal place of business located in Mississippi County, Arkansas. Nucor's registered agent for service of process is The Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201.

3. John Does 1-10 are subsidies, affiliates, partnership entities, or other business entities retaining some or all of the ownership interest of Nucor-Yamato Steel Company (Limited Partnership), who employed the personnel operating the remote operated crane, who negligently engaged the crane and moved the load next to the trailer upon which Plaintiff was

adjusting dunnage on the date of the incident described herein, or who were otherwise involved in assisting with the placement of the load on the date of the incident. John Does 1-10 are individually liable and vicariously liable for the negligence of all of these individuals' actions through the doctrines of agency and respondeat superior. A diligent search for the identity of these individuals has been conducted. Upon ascertaining the identity of these defendants, the appropriate names will be substituted. See Exhibit 1, Affidavit of Tony L. Wilcox.

## II. JURISDICTION AND VENUE

4. Plaintiff is a resident of and is domiciled in the state of Kentucky.

5. Defendant Nucor is a foreign limited partnership which conducts and operates its business in Arkansas, including Mississippi County, has substantial contacts with the state of Arkansas through the operation of its plant in Mississippi County, and committed unlawful acts which caused personal injury of Mr. Howard in Mississippi County, Arkansas. Defendant Nucor is, therefore, subject to personal jurisdiction in Arkansas.

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. §1332, as Plaintiff and Defendant are residents of different states. This Court has jurisdiction over the subject matter of this action and venue is proper as this is an action arising from personal injuries sustained in Mississippi County.

7. Venue is proper in this district pursuant to 28 U.S.C. §1391 and that a substantial part of the events or admissions giving rise to this claim occurred within the

district, the Defendant resides in the district, and the Defendant has substantial contacts within the district that is sufficient to subject it to personal jurisdiction within this Court.

8. The amount in controversy exceeds that required for Federal Diversity Jurisdiction.

### III. FACTS

9. Paragraphs 1 through 9 are incorporated by reference as if set forth fully herein.

10. Robert C. Howard was a truck driver for CC Transport. Defendant Nucor and Plaintiff's employer had entered into an agreement for transportation services.

11. On July 27th, 2011, Mr. Howard arrived at the Nucor facility in Mississippi County, Arkansas for the purpose of transporting steel machining equipment owned by Nucor.

12. The flatbed tractor trailer operated by Mr. Howard was directed to a loading area where an employee of Defendant Nucor was operating the loading equipment, a remote operated crane. At all times herein Defendant's employee was in control of the method and the means of the loading of the trailer.

13. Loads of this type require the use of dunnage and chains or other securing devices to properly secure the load and prevent movement during transfer. Dunnage is timber or other materials placed underneath the load, between the load and the trailer.

14. Department of Transportation regulations provide that a truck driver, such as Mr. Howard, is responsible for placing the dunnage and securing the load so as to prevent

unexpected movement of the load during transport.

15. In fact, Nucor has a policy in place specifically directing its employees to allow the truck driver to place the dunnage and to make any adjustments necessary during the loading process. Nucor employees are specifically instructed not to engage in the placement of dunnage so as to prevent liability on the part of Nucor should the load shift or otherwise become unsecured during transportation.

16. In order to properly place the dunnage, the item loaded onto the trailer must be positioned next to the trailer so that the driver can correctly place the dunange, making sure that the load is properly distributed, both front to back and side to side. The driver then climbs onto the trailer where he adjusts the dunnage to correspond with the load positioned next to the trailer. If necessary, the driver will also move the trailer forward or backward to ensure even loading.

17. In this case, a Nucor employee had positioned the load parallel and partially above the trailer. It was vital to the safety of Mr. Howard that the Nucor employee stop all movement of the load and hold it in position while Mr. Howard properly placed the dunnage on the trailer. Mr. Howard made sure the crane operator had stopped the load and knew he was going on the trailer to place dunnage.

18. With Mr. Howard on the trailer adjusting the dunnage, the Nucor employee unexpectedly and negligently moved the load, causing the load to strike the dunnage being positioned by Mr. Howard. Upon information and belief, the load striking the dunnage

weighed in excess of 50,000 pounds.

19. The impact of the load striking the dunnage forced Mr. Howard into the air and off of the trailer. Upon landing, Mr. Howard was severely injured.

20. After the incident, the Nucor employee approached and stated the remote controls had been malfunctioning for some time, causing unexpected starts and stops.

### IV. COUNT ONE: NEGLIGENCE

21. Paragraphs 1 thru 20 are incorporated herein as set forth herein word for word.

22. Defendant's employee had the duty to exercise reasonable care loading the tractor trailer driven by Robert C. Howard.

23. Defendant's employee failed to use reasonable care and, in fact, acted unreasonably and negligently in the loading of the tractor trailer driven by Robert C. Howard, proximately causing serious injury.

24. Defendant's negligence includes, but is not limited to, the following:

   1. Vicarious liability for the careless, reckless and negligent operation of loading equipment by its employee with the full knowledge of the dangers associated with such careless, reckless and negligent activity;

   2. Lack of proper training and implementation of safety procedures to prevent occurrences of the type which caused the injuries to Robert C. Howard;

   3. Failure to warn of a dangerous condition known to Defendant;

4. The failure to warn drivers, including Mr. Howard, of the dangerous propensity of unexpected movement of the loading equipment;

5. Vicarious liability for the negligence of its employee in proceeding with the loading and movement of the steel load despite the fact that, based upon his previous experiences and training, he knew or should have known that Mr. Howard was in a zone of danger; and

6. Vicarious liability for the negligence of its employee for failure to keep a proper lookout for pedestrians and truck drivers, including Mr. Howard.

25. As a direct result of Defendants' negligence, Mr. Howard suffered injuries which included, but were not limited to a joint depression fracture of his calcaneus. As explained below, the damages arising from these injuries exceed that which is required for federal diversity jurisdiction.

26. The injuries sustained by Mr. Howard were proximately caused by Defendant's negligence and by Defendant's employee for whom Defendant is vicariously liable.

27. Defendant Nucor-Yamato Steel Company is directly liable for its own negligence and is vicariously liable for the actions of its employee.

28. Immediately following the incident on July 27, 2011, Plaintiff was transported by ambulance to Great River Medical Center with injuries to his left foot, knee, back and head. A CT of his foot revealed a severely comminuted fracture of the calcaneus and

identified as a joint depression fracture. An Open Reduction with Internal Fixation (ORIF) surgery was performed by placing a steel plate with several screws into Mr. Howard's foot. Dr. Day's records indicate that "this is a life changing experience even with a successful reduction." After discharge, Mr. Howard was unable to walk without assistance.

29. Mr. Howard was instructed during his follow-up appointment on 08/17/11 to maintain non-weightbearing status (i.e. continue use of walker) on his surgically repaired foot and to return for another evaluation in a month.

30. Mr. Howard began follow-up care following surgery on 09/29/11 in his home state of Kentucky with Dr. Stroghill at the Orthopaedic Institute of Western Kentucky. Dr. Stroghill's records indicate that the internal fixation of the severely comminuted calcaneus fracture, while successful, limited the continued course of treatment to physical therapy with a goal to wean Mr. Howard off of the Cam walker and proceed with gait training. Dr. Stroghill's records indicate that "these are devastating type injuries, and more than likely he will have problems with subtalar osteo-arthritis and ambulation for the rest of his life."

31. On November 30, 2011, Dr. Stroghill noted that damage to the cartilage of the subtalar joint, as well as degenerative changes and sclerosis of the subtalar joint were all continuing to cause problems with Mr. Howard's recovery. Dr. Stroghill extended the therapy with the hopes of increasing Mr. Howard's mobility, ambulation and decreasing Mr. Howard's pain.

32. On January 11, 2012, Dr. Stroghill determined that Mr. Howard had indications of early RSD (Reflex Symptomatic Dystrophy) secondary to the trauma and plantar fasciitis as a result of the prolonged immobilization.

33. Due to lack of improvement and increasing pain, Dr. Stroghill determined that removal of the plate and screws previously used during the internal fixation would be required. Mr. Howard ultimately underwent another surgery on his left foot on 04/30/12 in an attempt to relieve some of the chronic pain experienced by Mr. Howard.

34. Mr. Howard also underwent independent medical care from Dr. Michael Calfee at Advanced Orthopedics and Sports Medicine, PLLC beginning on 08/27/12. Dr. Calfee indicates in his evaluation of Mr. Howard that Mr. Howard was still experiencing pain and swelling of his left foot when performing activity and had not worked since he was injured.

35. Mr. Howard continues to suffer severe limitations related to this injury. He has difficulty walking, limited movement, pain and loss of sensation.

36. Mr. Howard can no longer work as a truck driver as a result of his injury and has remained unemployed since this incident.

37. To date, Mr. Howard's medical expenses total $46,011.40. Mr. Howard was 55 years old at the time of his injury and thus had a work expectancy of at least 10 years at the time of his injury. Mr. Howard's wages at the time of the injury were $22,585.00 per year. Thus, economic loss alone exceeds $270,000.00.

38. Plaintiff is entitled to recover the following elements of damages, all of which were proximately caused by Defendant's conduct:

(A) Compensation for all past and permanent injuries and litigation caused by Defendant's negligence;

(B) The reasonable expense of all necessary medical care, treatment and services received, including transportation, board and lodging expenses necessarily incurred in securing such care, treatment, and services;

(C) The present value of all future medical care, treatment and services, including the present value of transportation, board and lodging expenses necessary in securing such care;

(D) Compensation for all pain and suffering and mental anguished suffered in the past;

(E) Compensation for all pain, suffering and mental anguish to be experienced in the future;

(F) The value of all past earnings lost;

(G) The present value of all earnings to be lost in the future;

(H) Compensation for all scars, disfigurement and visible results of his injury; and

(I) The reasonable expense of any medical devices and future necessary help in his home, which have been or is or will be required as a result

of his injury.

39. Upon information and belief, other similar incidents had occurred prior to July 27, 2011 resulting in severe injury and death to other truck drivers. Moreover, the crane in use was known to be malfunctioning at the time of Mr. Howard's injury.

40. Defendant knew or should have known in light of the surrounding circumstances, that their conduct would naturally and probably result in injury or damage and Defendant continued the conduct with malice and in reckless disregard of the consequences from which malice might be inferred. Defendant should be deemed to have intentionally pursued the course of conduct for the purpose of causing injury and that conduct did, in fact, harm Mr. Howard. Accordingly, Plaintiff is entitled to punitive damages in an amount to be determined by the jury.

41. Pursuant to Ark. Code Ann. § 16-62-101(b), in addition to all other elements of damages provided by law, Plaintiff prays that he have and recover damages and judgment from and against the Defendant, jointly and severally, as compensation for his injuries.

42. Plaintiff should have and recover judgment in an amount to be set by the jury in excess of the minimum amount required for federal court diversity from the Defendant, jointly and severally, as compensatory damages for the injuries, wrongful death, survival, and loss of life of Mr. Thomas.

43. Plaintiff requests a jury trial.

WHEREFORE, Plaintiffs requests that she have and recover against Defendant, compensatory and punitive damages in an amount in excess of that required for Federal Diversity Jurisdiction to be determined by a jury and all other fees and costs to which Plaintiff is entitled.

Respectfully submitted,

Tony L. Wilcox #93084
Brandon W. Lacy #30098
TONY L. WILCOX, P.A.
600 S. Main Street
Jonesboro, AR 72401
870-931-3101


Attorneys for Plaintiff,

By: _____/s/ Tony L. Wilcox_____
TONY L. WILCOX, #93084

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

**ROBERT C. HOWARD**                                                                                      **PLAINTIFF**

VS.                                            CV_____

**NUCOR-YAMATO STEEL COMPANY (LIMITED
PARTNERSHIP); and JOHN DOES 1-10**                                                **DEFENDANTS**

### AFFIDAVIT

I, Tony L. Wilcox, attorney for Plaintiff Robert C. Howard do solemnly swear and affirm that the identity of the additional tortfeasors stated as John Does 1-10 are unknown. I have attempted a diligent inquiry to ascertain the identity of any such tortfeasors, but have been unable to determine the identity of said tortfeasors. Upon determination of the identity of the additional tortfeasors, I will amend the Complaint and substitute the real names for the pseudo-names.

_____
Tony L. Wilcox

STATE OF ARKANSAS      )
                       ) ss.
COUNTY OF CRAIGHEAD    )

SUBSCRIBED AND SWORN TO before me this 22nd day of July, 2014.

_____
NOTARY PUBLIC

My Commission Expires:

2/16/16

Samantha Hogan
Official Seal
Notary Public-Arkansas
Independence County ID# 12346663
My comm exp 2/16/16

12